Welch, C. J.
A majority of us concur with the court below in holding that this transaction between the corporation and the so-called “ preferred stockholders ” was, in fact and 'in law, a loaning of money upon mortgage security, and not the creation of additional members of the corporation. We think this conclusion must be reached, whether we regard the statute in question as constitutional and valid to smy extent, or for any purpose, or whether we are to consider it as wholly void, and the transaction between the parties as unaided by its provisions. In the absence of any such a statute, the corporation had *128 power to borrow money for the payment of its debts, and for the prosecution of its business. It surely had power to sell and issue its remaining $160,000 of the capital stock. If'it could sell this stock for money, it is difficult to see why it could not borrow the money, and agree to repay the amount either in money or in stock, at the option of the lender. The latter is what was done, and all that was done, if we are right in our interpretation of the contract between the parties. True, without the aid of the statute, the corporation could pay no more than eight per cent, per annum for the use of the money. Whether it could increase this rate by selling the stock under par, either with or without the aid of the statute, is not a question raised upon the í’eeord. I can not see that the statute gives any new power of that kind. It simply authorizes the company to “sell and dispose of” its stock. This power it had before the passage of the act. If, therefore, we are right in holding that this was a mere loaning of money, and not an increase of the company’s stock, the company has only exercised the powers which it had before the passage of the act.
But are we right in this interpretation ? If we are, a corresponding interpretation must be given to the statute under which the parties professed to act, and the provisions of which they substantially followed. Is such the true interpretation of the statute? In other words, is it to be construed as a statute merely authorizing such corporations to borrow money to a limited amount, at eight per cent, interest, to guarantee its repayment by mortgage or otherwise, and to give the lenders the option to convert the loan into stock? Such we think is the legislative intent to be gathered from all the provisions of the act. But for the words “ stock,” and “ dividends,” occurring in the act, no other interpretation would be possible. If we can understand the word “ dividend ” in the sense of interest, and the word “stock” in the sense of debt, so that “ certificates of stock” will mean certificates of indebtedness, and “ preferred stockholders ” mean preferred creditors or preferred certif, *129 cate holders, there is no trouble in so interpreting the act,, and making all its provisions harmonious and constitutional. On the other hand, to give it the interpretation-contended for on behalf of the defendants would be to disregard its manifest purpose, to make its several provisions repugnant with each other, and to bring the act indirect conflict with the constitution of the state. Such a-construction makes the legislature say that the holders of these certificates shall be stockholders without any of the-rights of stockholders—preferred stockholders without the-rights of common stockholders. The act denies them every element and attribute of ownership or actual membership. They have no right to vote, or to take any. part in the possession or control of the concern. They gain nothing by its success, and lose nothing by its failure. They have no-participation in either the profits or losses. They are strangers to the company, have no interest in it, and look alone to its promise and its mortgage for remuneration. It is, moreover, expressly declared that they shall not be individually liable to creditors. If it was the legislative'intention to make them stockholders in fact, and not merely in name, then the intention must ha^e been to violate a. plain and well known provision of the constitution, which declares all stockholders liable to creditors. Such an intention can never be presumed if the statute admits of any interpretation which avoids the presumption. A stockholder, in such a corporation in Ohio, without individual liability, is simply an impossibility. To declare a party not individually liable is, prima facie, to declare him not a stockholder. It is but reasonable to conclude that the legislature, by simply denominating these parties “preferred stockholders,” and calling the semi-annual payments to them “dividends,” did not mean to violate this well-known provision of the constitution, and also to nullify the substantial provisions of the act, which give to such parties ad the-relations and characteristics of creditors of the corporation,, and none of those which belong to its real owners and. *130 members. To give tbe contrary interpretation to the act would be to regard its letter rather than its spirit and intention. To call a thing by a wrong name does not change its nature. A mortgage creditor, although denominated a preferred stockholder,” is a mortgage creditor nevertheless ; and interest is not changed into a “ dividend ” by calling it a dividend. Nothing is more common in the construction of statutes and contracts than for the court to •correct such self-evident misnomers by supplying the proper words. To use the language of the court, in Corcoran & Riggs v. Powers, 6 Ohio St. 19, “the question in such cases is not what did the parties call it, but what do the facts and circumstances require the court to call it.” A man who advances his money to a corporation, and takes a bond and mortgage for its repayment, and who, by express agreement between the parties, takes no interest or risk in the •concerns of the company, is a creditor of the company, and to call him a “stockholder” is a simple misnomer. He is .á creditor, and remains a creditor, until by some future act of his own, he elects to become a stockholder, or otherwise changes his relation. The right to become a stockholder does not make its possessor a stockholder.
But it is said that by the fourth section of the act, the «emi-annual “ dividends ” to these creditors can only be paid out of the “profits,” and that they have, therefore, an Interest in the concern, and are real stockholders and members. This is a misconstruction of that section. The word •“profits” is another misnomer, and is evidently used for ■earnings, or income, because it makes the “ expenses,” as well as these “ dividends ” of 4 per cent., payable out of the profits, whereas there are no profits until the “ expenses ’’ .are all paid or deducted. The object of the section is to define what shall be paid to the common stockholders, and not what shall be paid to the “preferred stockholders.” The true meaning of the section is, that common dividends shall be paid out of the surplus of earnings remaining after setting apart this four per cent., and all other expenses. *131 The four per cent, is to be regarded as part of the “ expenses ” or outlays. ■
Questions are also raised and argued as to the validity •of the mortgage upon the' personal property, or a portion •of it. These we have deemed it unnecessary to consider, farther than to say that we see no error in this respect, or an any other respect, in the judgment of the court below.

Judgment affirmed.